**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-20490**
_____

**METROPOLITAN LIFE INSURANCE COMPANY,**

**Plaintiff-Counter Defendant-Appellee,**

**versus**

**HADEN & COMPANY; CHARLES M. HADEN, JR.,**

**Defendants-Counter Claimants-Appellants.**

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-96-CV-1139)
_____

September 9, 1998

Before POLITZ, Chief Judge, JONES, and DUHÉ, Circuit Judges.

EDITH H. JONES, Circuit Judge:[*]

This case concerns a landlord-tenant dispute between
Metropolitan Life Insurance Company ("MetLife"), the landlord, and
Charles M. Haden, Jr. and Haden & Company (collectively "Haden"),
the tenant.  MetLife sued Haden to recover unpaid rent, and Haden
counterclaimed on various grounds.  The district court (i) granted
MetLife a stay of discovery pending the resolution of all
dispositive motions, (ii) granted MetLife's motion for judgment as
a matter of law on its breach of contract claim, and (iii)
dismissed Haden's counterclaims under Federal Rule of Civil

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Procedure 12(b)(6). Haden appeals all three rulings. We affirm in part but vacate and remand the promissory estoppel claim.

## I. FACTS

### A. Background

In May 1989, Haden and MetLife entered into a commercial lease agreement ("Lease") for office space in the Post Oak Park Building in Houston, Texas. The term of the Lease extended from September 15, 1989, to January 15, 1995. The monthly rent was $6773.97. The Lease gave Haden the option to renew the Lease for an additional five years if notice was given by January 15, 1994. Haden never gave MetLife such notice.

In early 1995, Haden and MetLife entered into a First Amendment to the Lease. The First Amendment incorporated the terms of the Lease, extended the Lease's term to April 15, 1995, and increased the monthly rent to $8,953.00. It also acknowledged that MetLife was not in breach of the Lease. After April 15, 1995, Haden become a holdover month-to-month tenant with MetLife's consent. However, from August 1995 until January 1996, when it vacated the premises, Haden did not pay any rent to MetLife.

On October 13, 1995, MetLife notified Haden that it was in default on the Lease and that MetLife had elected to terminate the Lease as of November 15, 1995. On November 15, 1995, MetLife notified Haden that (i) the Lease was terminated, (ii) Haden owed $31,706.64, (iii) any holdover beyond this date was without MetLife's consent, and (iv) such a holdover would subject Haden to

2

liability for double rent pursuant to the Lease. On January 22, 1996, Haden vacated the premises without paying any of the outstanding rent or other charges owed.

## B. Haden's Version of Events

Haden claims that it initially anticipated vacating the premises when the Lease expired in January 1995. In this regard, on September 12, 1994, it hired a commercial real estate broker, Craig Beyer, to negotiate leasing new office space. Haden alleges that a minimum of four months was necessary for it to locate and acquire the amount and quality of office space it needed.

Coincidentally, on September 13, 1994, David Lakin, an agent for PM Reality Group, sent a letter to Haden offering to negotiate an extension of the Lease on MetLife's behalf. Haden alleges that because it had invested $30,000 in improving its premises during the course of the lease, it authorized Beyer to negotiate with Lakin. On October 7, 1994, Lakin sent Haden a proposal for a new long-term lease, which explicitly stated that it was not intended to be binding and could be withdrawn at any time.[2]

---

[2] Specifically, the proposal stated:

> This proposal is not intended to be a legally binding agreement. Nothing contained herein shall be used ore [sic] relied upon by either party hereto in any evidentiary manner, or otherwise, to subsequently attempt to demonstrate that the parties hereto have entered into any binding agreement or for any other purpose. It is the intent of parties that no such legally binding agreement shall exist unless and until a formal and definite lease agreement has been negotiated, drafted, approved by the appropriate corporate officer . . . . While the parties may commence or continue negotiations

3

Haden alleges that, based upon this proposal, it stopped its search for new office space, anticipating entering into a new long-term lease with MetLife. However, despite repeated attempts to close the deal and continued promises from MetLife that a long-term lease was forthcoming, MetLife allegedly avoided closing. Then, MetLife allegedly insisted that the First Amendment be signed prior to the execution of any long-term lease.

According to Haden, after the expiration of the First Amendment, MetLife continued to promise a long-term renewal. On June 15, 1995, Lakin and Beyer met and discussed the terms of a new long-term lease. Haden alleges that at this meeting the parties agreed on terms for a new seven-year lease. According to Haden, Lakin also specifically promised that a written lease would be signed in "a day or so."[3] No written lease was forthcoming.

Between March and July of 1995, Haden made what it terms "substantial computer purchases" totaling approximately $24,890.93.

---

relating to the proposed transaction described in this proposal, each party reserves the right to terminate such negotiations at any time, with or without cause and for any reason, without any liability to the other party.

[3] In a post-oral argument letter to the court, MetLife now apparently admits that Lakin promised that MetLife would enter into a new lease with Haden based upon the terms Lakin and Beyer discussed. MetLife argues, however, that Lakin did not have authority to bind MetLife. Rather, MetLife contends, Lakin was its agent to negotiate the terms of a new lease, but not to enter into the lease. "At most, Mr. Lakin could merely represent that he would take the discussed terms back to MetLife to see if the terms were acceptable. Haden & Company's allegations, therefore, establish at most an agreement to agree that is unenforceable in Texas without regard to the statute of frauds."

Following the June 15 meeting, Haden also alleges that it incurred labor expenses of $5,472.27 related to improving or repairing its computer network system.

In September 1995, Haden learned that MetLife was negotiating with Cray Computer Corporation to lease the office space occupied by Haden. Haden contacted MetLife and was allegedly informed that MetLife would not honor the terms of the lease previously agreed to on June 15, 1995, but that MetLife would enter into new negotiations with Haden. At some later date, a meeting was scheduled for December 28, 1995, but it never took place. On January 6, 1996, Haden was served with MetLife's "Complaint in Forcible Detainer," giving it ten business days to vacate the premises. Because Haden allegedly needed four months to find suitable new lease space, it claims to have been forced by MetLife's actions (1) to rent premises that were considerably more expensive than at the Post Oak Park Building, (2) to incur significant renovation expenses because the new premises were ill-suited to Haden's needs, and (3) as a to result, to suffer lost profits during the renovation period.

## C. The Lawsuit

On April 9, 1996, MetLife filed the instant lawsuit claiming breach of contract and seeking unpaid rent and other contractual damages. Haden answered that it was, in fact, MetLife that had breached the Lease by failing to renew the Lease. Haden also counterclaimed for promissory estoppel, fraud, negligent

5

misrepresentation, Deceptive Trade Practices Act (DTPA) violations, and civil conspiracy.

MetLife filed a motion for summary judgment on its breach of contract claim and a motion to dismiss Haden's counterclaims. On November 7, 1996, the district court stayed the parties' discovery pending the court's ruling on all dispositive motions. On January 8, 1997, the district court granted summary judgment to MetLife on its contract claim and dismissed Haden's counterclaims.

## II.  ANALYSIS

### A.  MetLife's Claim: Breach of the Lease

The district court found that Haden breached its Lease with MetLife by failing to pay rent, and it granted judgment as a matter of law to MetLife on this claim.  This court reviews a grant of summary judgment de novo, viewing all facts in the light most favorable to the nonmovant.  *See Houston v. Holder* (*In re Omni Video, Inc.*), 60 F.3d 230, 231 (5th Cir. 1995).  Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  *See id.*

MetLife argues convincingly that Haden breached the Lease as a matter of law.  Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) that the defendant breached the contract; and (4) that the plaintiff was damaged as a result of the breach.  *See Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326 (Tex. App.—Houston [1st Dist.]

1995, no writ).  No party disputes that Haden, while remaining a tenant of the Post Oak Park Building, failed to pay rent from August 1995 to January 1996, as well as other charges due and owing for its holdover tenancy.  Therefore, Haden breached the Lease as a matter of law, and MetLife is entitled to damages unless Haden is correct that MetLife breached the Lease first.  *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) (holding that when one party materially breaches a contract, the other is excused from performance under the contract); *Dallas Mkt. Ctr. v. The Swing, Inc.*, 775 S.W.2d 838, 842 (Tex. App.—Dallas 1989, no writ) ("[O]ne who has broken a contract himself cannot recover on it.") (citing *Joseph v. PPG Indus., Inc.*, 674 S.W.2d 862, 867 (Tex. App.—Austin 1984, writ ref'd n.r.e.)); *cf. Bieganowski v. El Paso Med. Ctr. Joint Venture*, 848 S.W.2d 361, 362 (Tex. App.—El Paso 1993, writ denied) ("One who has breached a contract by failure to pay rent . . . cannot recover for an alleged breach of the same contract by the other party").

Haden argues that MetLife was required under the terms of the Lease to renew the Lease for an additional five years.  This is true, but only if Haden gave MetLife notice of its intent to renew by January 15, 1994.  All parties agree that Haden did not give such notice.  Therefore, MetLife's failure to renew the Lease can in no way be interpreted as a breach of the terms of the Lease.  *Cf. Hush Puppy, Inc. v. Cargill Interests, Ltd.*, 843 S.W.2d 120, 122 (Tex. App.—Texarkana 1992, no writ) (holding that options to

7

renew a lease for an additional term must be exercised strictly according to the option provisions) (citing *Zeidman v. Davis*, 342 S.W.2d 555 (Tex. 1961)).

Haden responds that MetLife waived the notice requirement by offering to negotiate an extension of the Lease in September 1994. A party waives a right when it intentionally relinquishes that right or engages in intentional conduct inconsistent with claiming the right. *See Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). MetLife never acted inconsistently with the Lease's renewal terms and, therefore, did not waive its right to notice. It was entirely consistent with the Lease's terms for MetLife to offer to negotiate a lease extension with Haden in September 1994. The Lease's renewal provisions did not state that MetLife would not renew the Lease unless it received one year's notice; rather, it stated that MetLife was not required to renew the Lease without one year's notice. No interpretation of the facts as pleaded supports a finding that MetLife waived the Lease's notice provision. Haden's waiver argument is utterly meritless.

Therefore, the district court's grant of judgment as a matter of law to MetLife on its breach of contract claim is affirmed.

## B. Haden's Counterclaims

The district court dismissed all of Haden's counterclaims on a Rule 12(b)(6) motion. This court reviews a dismissal on the pleadings de novo, applying the same standard as the district

8

court. *See Truman v. United States*, 26 F.3d 592, 593 (5th Cir. 1994). "Accordingly, we accept the well-pleaded allegations in the complaint as true, and we construe those allegations in the light most favorable to the plaintiff." *Id*. at 594. Dismissal is appropriate "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Rubinstein v. Collins*, 20 F.3d 160, 166 (5th Cir. 1994). "A motion to dismiss under Rule 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).

### (1) Promissory Estoppel

Haden argues that on June 15, 1995, MetLife orally promised to sign a new seven-year lease with Haden. The Texas statute of frauds requires that "a lease of real estate for a term longer than one year" must be in writing. TEX. BUS. & COM. CODE ANN. § 26.01(b)(5) (Vernon 1987). Obviously, a seven-year lease falls within the statute of frauds.

Under Texas law, however, promissory estoppel excepts certain contracts falling within the statute of frauds from being unenforceable. *See Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982); *"Moore" Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934 (Tex. 1972). "[C]ourts will enforce an oral promise to sign an instrument complying with the Statute of Frauds if: (1) the promisor should have expected that his promise would lead the

9

promisee to some definite and substantial injury; (2) such an injury occurred; and (3) the court must enforce the promise to avoid injustice." *Nagle*, 663 S.W.2d at 800 (citing *"Moore" Burger*, 492 S.W.2d at 937); *see also Collins v. Allied Pharmacy Management, Inc.*, 871 S.W.2d 929, 936 (Tex. App.—Houston [14th Dist.] 1994, no writ).[4] Specifically, the elements of promissory estoppel are: (1) a promise; (2) foreseeability of reliance on the promise by the promisor; and (3) substantial detrimental reliance by the promisee. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Collins*, 871 S.W.2d at 937. The burden of establishing promissory estoppel rests upon its proponent, not on the party who has established a statute of frauds bar to enforcing a contract as a matter of law. *See "Moore" Burger*, 492 S.W.2d at 936-37; *Collins*, 871 S.W.2d at 936.

Haden alleges that on June 15, 1995, Beyer and Lakin agreed to the terms of a seven-year renewal lease and that Lakin specifically promised that a new lease would be signed within "a day or two." Haden also contends that it substantially and detrimentally relied on this promise. For purposes of reviewing a 12(b)(6) dismissal, Haden has clearly alleged the basic elements of a promissory estoppel claim. Therefore, the issue before this court is whether, accepting all of Haden's well-pleaded allegations

---

[4] The promissory estoppel exception to the statute of frauds is specifically limited, however, to cases where the promise was "to sign a written agreement which itself complies with the Statute of Frauds." *Nagle*, 663 S.W.2d at 800 (quoting *"Moore" Burger*, 492 S.W.2d at 940).

10

as true, any relief could be granted to Haden under any set of facts that could be proven consistent with its allegations. Haden argues that it reasonably relied on MetLife's promise to its substantial detriment when it (1) purchased approximately $30,000 in new computer equipment and wiring from March to July of 1995, expecting to remain a tenant of the Post Oak Park Building; and (2) was evicted from its premises in January 1996, without the needed four months to find appropriate new office space. This hurried departure forced Haden to pay higher rent, expend funds to refurbish the new office space, and suffer lost profits. The district court found that Haden's alleged losses neither were made in reasonable reliance on MetLife's promise nor constituted action or forbearance of a definite and substantial character.

Regarding Haden's relocation expenses, we agree with the district court. MetLife's alleged promise to sign a new lease was made on June 15, 1995. On October 13, 1995, MetLife informed Haden that it had elected to terminate the lease as of November 15, 1995, because Haden was in default for failure to pay rent. This was a clear signal to Haden that MetLife was renouncing its alleged promise, and yet Haden took no steps within the next three months to locate new office space. Even after MetLife informed Haden on November 15, 1995, that the Lease was terminated, Haden still took no steps to locate new office space. No reasonable trier of fact could conclude that Haden's actions in this regard were in

11

reasonable reliance on MetLife's alleged -- and subsequently renounced -- promise of June 15.

Regarding Haden's computer expenses, we disagree with the district court. Haden contends that between March and June 8 of 1995, it spent approximately $17,669.11 on computer equipment for its office space in the Post Oak Park Building. Because Haden specifically alleges that its reliance is based upon MetLife's June 15 promise, these expenses cannot have been incurred in reliance on that promise. However, Haden also contends that after the June 15 meeting it expended an additional $7,222.32 on computer equipment as well as $5,472.27 on labor expenses related to "the network system." These two sums together ($12,694.59) come close to equaling Haden's rent payments for one and a half months.

It is also possible that Haden can prove it was required to pay higher rent after relocation than it would have paid under a lease consistent with the June 15 terms, even after discounting for Haden's failure timely to begin seeking other business space.

Without any discovery or evidentiary development, we cannot say that Haden has not alleged facts sufficient to overcome a 12(b)(6) motion to dismiss. With further factual development, it is not beyond all doubt that no relief could be granted to Haden under any set of facts that could be proven consistent with its allegations. The losses to a small, independent business that Haden asserts are not necessarily insubstantial, and Haden's

12

alleged reliance is not necessarily unreasonable based only upon Haden's notice pleadings.

Therefore, the district court is reversed as to its dismissal on the pleadings of Haden's promissory estoppel counterclaim. While it is far from obvious that Haden will prevail on remand after discovery has occurred, Haden has alleged facts sufficient to pass the 12(b)(6) hurdle.

## (2)  Fraud

Haden's fraud claim is based on MetLife's alleged repeated deceitful promises to enter into a new long-term lease with Haden. "A fraud cause of action requires 'a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury.'" *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc*., 960 S.W.2d 41, 47 (Tex. 1998). The district court dismissed Haden's fraud claim on three grounds: (1) Haden failed to state a claim for fraud because it did not allege the breach of a noncontractual duty; (2) absent a fiduciary or confidential relationship, the failure to disclose information (*i.e.*, that MetLife was negotiating with Cray Computer Corp.) is not actionable as fraud; and (3) Haden's fraud claim was barred by the statute of frauds. On appeal, Haden challenges the district court's ruling that its fraud claim was barred by the statute of frauds because the claim sounded in contract rather than tort.

13

As a general rule, plaintiffs cannot turn what are essentially contract claims into tort claims by artfully pleading their causes-of-action and damages. *See Formosa*, 960 S.W.2d at 44-46; *Southwestern Bell Telephone Co. v. DeLanney*, 809 S.W.2d 493 (Tex. 1991). Determining whether a claim lies in contract or tort requires an examination of the nature of the alleged injury and the source of the breached duty. *See Formosa*, 960 S.W.2d at 45. Generally, if the only damages claimed are the economic losses caused by the defendant's failure to perform the contract, then the action sounds in contract. *See id.; DeLanney*, 809 S.W.2d at 494-95; *Leach v. Conoco, Inc.*, 892 S.W.2d 954 (Tex. App.--Houston [1st Dist.] 1995, writ dism'd w.o.j.).

Significantly, however, the Texas Supreme Court recently examined a claim for fraudulent inducement to contract, holding that tort damages can be recovered for a such a claim absent an injury that is distinct from any permissible contractual damages. *See Formosa*, 960 S.W.2d at 46-47. Although the holding was expressly limited to a claim for fraudulent inducement, the court stated in reaching its decision that

> [t]his Court has also repeatedly recognized that a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract. For example, in *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex. 1992), we noted: "As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud." Similarly, in *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986), we held that a fraud claim

14

could be maintained, under the particular facts of that case, for the breach of an oral agreement to pay a bonus because a "promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Accord T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971).

*Id*. at 46-47. The court also stated that "[a] promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Id*. at 48 (citing *Schindler v. Austwell Farmers Coop.*, 841 S.W.2d 853, 854 (Tex. 1992)).

Numerous Texas courts of appeals had held prior to *Formosa* that a fraud claim sounds in contract alone when the only injury alleged is contractual economic loss. *See, e.g.*, *Leach*, 892 S.W.2d at 960; *Collins*, 871 S.W.2d at 935-36. *Formosa*, however, expressly rejected that aspect of these cases[5] and, but for the statute of frauds, would breathe new life into Haden's fraud claim. Haden has alleged that MetLife's June 15 promise was both a material misrepresentation known to be false when made and was relied upon by Haden to its detriment.

But even if true, those facts prove only that Haden and MetLife had an oral contract. Texas law appears clear that as the very purpose of the statute of frauds is to prevent fraud in oral transactions, common law fraud is barred by the statute. *See Nagle*, 633 S.W.2d at 800-01; *Collins,* 871 S.W.2d at 935; *Webber v.*

---

[5]The expressly rejected cases include, *e.g., Barbouti v. Munden*, 866 S.W.2d 288, 293-94 (Tex. App.--Hou [14th Dist.] 1993).

15

*M.W. Kellogg Co.* 720 S.W.2d 124, 128 (Tex. Civ. App.--Hou. [14th Dist.] 1986 writ ref'd n.r.e.). "Application of the statute of frauds to a contract vitiates a fraud claim based on the same facts." *Collins*, 871 S.W.2d at 935; *see also American Nat. Ins. v. Intern. Bus. Mach.*, 933 S.W.2d 685, 689 (Tex. App.--San Antonio 1996, writ denied) (no recovery for fraud on contract barred by statute of frauds). *Formosa* neither dealt with nor appears to cast doubt on this proposition. We conclude that Haden's fraud claim is barred.

### (3) Negligent Misrepresentation

In contrast to claims of fraud, the Texas Supreme Court has clearly stated that a claim for negligent misrepresentation can proceed only if there is an injury to the plaintiff independent of his contractual damages. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, No. 97-0631, 1998 WL 531686, at *2 (Tex. Aug. 25, 1998).[6] In addition, "[n]egligent misrepresentation may not be used to circumvent the statute of frauds." *Collins*, 871 S.W.2d at 936 (citing *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

Because Haden's alleged damages all stem directly from its economic losses under either the alleged renewal lease of June 15, 1995, or other alleged oral promises to contract, Haden's negligent misrepresentation claim sounds in contract alone. *See*

---

[6]This opinion has not yet been released for publication by the Texas Supreme Court and is, therefore, subject to change or withdrawal.

16

*D.S.A., Inc.*, *supra*.  Because Haden's negligent misrepresentation claim sounds in contract, it is barred by the statute of frauds. *See Leach*, 892 S.W.2d at 960; *Collins*, 871 S.W.2d at 935-36.

### (4)  DTPA

The Texas Supreme Court held in *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12 (Tex. 1996), that "an allegation of mere breach of contract, without more, does not violate the DTPA."  *Formosa*, 960 S.W.2d at 46; *see also Ashford Dev., Inc. v. USLife Real Estate Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1984) ("An allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA."). Again, because Haden's alleges no damages independent of its contractual injuries, Haden's DTPA claim is essentially a breach of contract claim.  In addition, representations that one will fulfill a contractual duty which one later fails to perform does not constitute misrepresentation, but rather the breach of a contractual duty.  *See Formosa*, 960 S.W.2d at 46.  Therefore, Haden's DTPA claim is barred by the statute of frauds because it is fundamentally based on an oral contract for a seven-year renewal lease.  *See Keriotis v. Lombardo Rental Trust*, 607 S.W.2d 44, 46 (Tex. App.—Beaumont 1980, writ ref'd n.r.e.) ("[B]oth the alleged misrepresentation and the damages sought support the conclusion that plaintiff is attempting to recover damages for failure to perform an oral promise governed by the statute of frauds.  No collateral agreement whatever is alleged or proved and no attempt

17

is made to establish any acts other than the promise to convey and the failure to do so.").

## (5) Civil Conspiracy

Haden does not appeal the district court's dismissal of its civil conspiracy claim and, therefore, this issue is not before the court.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's grant of judgment as a matter of law to MetLife and its dismissal of Haden's fraud, negligent misrepresentation and DTPA counterclaims. We reverse the district court's dismissal of Haden's promissory estoppel counterclaim. On remand, the district court shall permit the parties discovery as necessary to proceed on the claim remaining in this case.

**AFFIRMED IN PART**, **VACATED IN PART**, and **REMANDED.**